***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission AFFIRMS, with some modifications, the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. Plaintiff sustained an injury by accident on January 5, 2003. Defendants accepted this injury as compensable.
4. Plaintiff's average weekly wage is $664.00, which yields a compensation rate of $443.00.
 ***********
Based upon all the competent evidence adduced from the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 36 years old. He had completed high school and received an associate's degree in electrical home wiring. Plaintiff had been working for defendant-employer since October 2002, as an Apprentice Elevator Constructor Mechanic. In that position, he was responsible for assisting the elevator inspectors in all the required tasks, including manually moving weights to test the machinery.
2. On January 5, 2003, while working in the parking deck at the UNC-Charlotte campus, plaintiff suffered a compensable injury by accident. Plaintiff suddenly felt a burning sensation in his lower back and right buttock area while trying to break apart test weights used to inspect elevators.
3. Plaintiff waited a few weeks after his injury to see if the pain would resolve on its own, thinking that he had pulled a muscle. When it did not resolve after a few weeks, plaintiff presented to his family doctor, Dr. Harold S. Samuel, on January 29, 2003. Dr. Samuel told plaintiff that he had a hamstring strain and prescribed medication so that plaintiff could continue working.
4. On March 7, 2003, plaintiff again presented to Dr. Samuel, but Dr. Samuel still assessed a right hamstring strain and suggested that plaintiff continue with the previously prescribed medications for pain management.
5. On March 28, 2003, plaintiff's wife took him to the Emergency Room at Stanly Memorial Hospital. Based on the results of an MRI, the attending physician on duty, Dr. David Clark, diagnosed a midline herniation at L3-4 and L4-5 creating central canal narrowing and compression on the exiting nerve roots. He also found right posterolateral subligamentous disc herniation at the lumbosacral disc posteriorly displacing and compressing the right S-1 nerve root. Upon discharge from the hospital, plaintiff was referred to a neurosurgeon, Dr. Jerry Petty, at Carolina Neurosurgery and Spine.
6. From the history that plaintiff provided Dr. Petty, Dr. Petty noted that plaintiff's pain had progressed from his back and right buttock to pain that went from his right buttock down the back of his leg. Also, the pain in plaintiff's back essentially resolved about three weeks after it traveled down into his right leg. Dr. Petty noted that physical therapy and pain medication did not help plaintiff's condition.
7. Dr. Petty discussed the possibility of surgery with Dr. Michael Heafner, another neurosurgeon in Dr. Petty's practice, and on April 14, 2003, they decided to proceed with a right L5-S1 microdiscectomy. On May 6, 2003, plaintiff returned to Dr. Heafner and reported that he had been doing much better since the operation. Dr. Heafner returned plaintiff to light duty work with no lifting greater than five pounds. In a later examination on July 31, 2003, Dr. Heafner returned plaintiff to work with permanent restrictions of lifting no more than fifty pounds. At the hearing before the Deputy Commissioner, plaintiff testified that his current doctor in Ohio increased his restrictions to no lifting over thirty-five pounds and no repetitive bending.
8. On June 12, 2003, defendants initially accepted plaintiff's claim by filing a Form 60 with the Industrial Commission and paid total disability benefits to plaintiff on a weekly basis.
9. On October 24, 2003, Dr. Ann Brewer, a neurologist, examined plaintiff in an Independent Medical Examination at the request of defendants. She noted that plaintiff continued to have some numbness down his right leg at times but that he otherwise was doing well.
10. At the hearing before the Deputy Commissioner, plaintiff testified that due to his loss of income as a result of this accident, he had financial problems and had to move back to Hubbard, Ohio, where he and his family have lived with family members since February 27, 2004.
11. At the hearing before the Deputy Commission, plaintiff testified that, at defendants' request, he participated in Job Club in Albemarle, North Carolina, from October 20, 2003, to January 5, 2004. On November 3, 2003, plaintiff's Job Club Supervisor, Kenneth W. Egerton, completed his vocational assessment. Plaintiff then attended Job Club meetings regularly, pursued job leads that he found on his own with the techniques he learned at Job Club, and pursued leads that Job Club mentors found for him. Plaintiff further testified that he also contacted the North Carolina Employment Security Commission ("ESC") in attempts to find employment, and pursued leads that employees at ESC provided. Finally, plaintiff testified at the hearing before the Deputy Commissioner that when he completed his program at Job Club, it was his understanding that defendants would have a vocational rehabilitation specialist contact him to set up an appointment to assist him in finding employment, but no one ever contacted plaintiff in this regard.
12. Upon completion of Job Club, without having secured employment, plaintiff continued to search for work on his own, using the techniques that his instructors had taught him in Job Club. At the hearing before the Deputy Commissioner, plaintiff testified that for every thirty searches he made on the Internet, he would find approximately one viable job lead that was within his physical limitations. Plaintiff also pursued leads through the local newspaper in Hubbard, Ohio, and through referrals. In addition, plaintiff's wife assisted him with his Internet job search.
13. Though plaintiff has continued his job search in Ohio, he remains unable to secure suitable employment within his restrictions. The Full Commission finds that during the time plaintiff has been out of work, he has searched for suitable employment within his restrictions.
14. At the time of his accident, plaintiff was working as an Apprentice Elevator Constructor Mechanic pursuant to an Apprenticeship Agreement approved by the North Carolina Department of Labor. Since he has not yet completed his required hours for on-the-job training and related instruction, he has not yet reached the status of a full-fledge Elevator Constructor Mechanic.
15. Defendants retained Vocational Rehabilitation Specialist, Omega Autry, to prepare a Labor Market Survey Report and a Labor Market Survey Report Update for Stanfield, North Carolina and Hubbard, Ohio.
16. Ms. Autry testified that a Labor Market Survey is merely a starting point in the vocational rehabilitation process and that a person searching for suitable employment would benefit from further vocational rehabilitation assistance. Ms. Autry's Labor Market Survey Update only addressed jobs available in the Charlotte and Stanfield, North Carolina areas, which are over six hundred miles from plaintiff's home in Hubbard, Ohio. As plaintiff is now living in Ohio with his family due to the loss of his job, these positions do not qualify as suitable employment.
17. The Full Commission finds that defendants have not offered plaintiff work that was suitable and within his restrictions.
18. The Full Commission finds that the plaintiff would benefit from further vocational rehabilitation and job placement assistance.
19. The defendants have defended this claim upon reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On January 5, 2003, plaintiff sustained an injury by accident to his back as a result of a specific traumatic incident of the work assigned, arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of plaintiff's compensable injury to his back, plaintiff is entitled to continued compensation for total disability at the rate of $443.00 until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. As a result of plaintiff's compensable injury by accident, the plaintiff is entitled to have defendant pay for all his related medical expenses incurred or to be incurred, including vocational rehabilitation and job placement efforts, as may be reasonably required to effect a cure, give relief or lessen the period of disability. Plaintiff must cooperate with all vocational rehabilitation and job placement efforts. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
4. Defendants' defense of this claim was reasonable and not stubborn, unfounded litigiousness and, therefore, plaintiff is not entitled to an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Sparksv. Mountain Breeze Restaurant and Fish House, Inc., 55 N.C. App. 663,286 S.E.2d 575 (1982).
 ***********
Based upon the foregoing, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved herein, defendants shall pay total disability compensation to plaintiff at the rate of $443.00 per week beginning on March 28, 2003, and continuing each week thereafter until further Order of the Industrial Commission. Compensation that has accrued shall be paid to plaintiff in a lump sum, also subject to the attorney's fee hereinafter approved.
2. Defendants shall pay for all of plaintiff's medical expenses incurred or to be incurred, including vocational rehabilitation and job placement efforts, as may be reasonably required to effect a cure, give relief or lessen the period of disability. Plaintiff shall cooperate with defendants' vocational rehabilitation and job placement efforts.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff in Paragraph 1 of this Award is hereby approved for plaintiff's counsel and shall be deducted from sums due plaintiff and paid directly to plaintiff's counsel. Twenty-five percent (25%) of the lump sum amount due plaintiff shall be deducted from said amount and paid directly to plaintiff's counsel in one lump sum; thereafter, defendants shall pay every fourth check due plaintiff to plaintiff's counsel.
4. Defendants shall pay the costs of this action.
This the ___ day of October 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER